# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CHRISTOPHER PAULIC,
           Appellant,

v.

DEPARTMENT OF THE ARMY,
           Agency.

DOCKET NUMBER
PH-0752-14-0606-I-1

DATE: February 6, 2015

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Stephanie C. Miller</u>, Blakely, Pennsylvania, for the appellant.

<u>Dominique Bogatz</u>, Tobyhanna, Pennsylvania, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's removal on grounds that the agency failed to afford him his due process rights. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2   The appellant was a GS-7 Sandblaster at the Tobyhanna Army Depot in Tobyhanna, Pennsylvania with over 7 years of federal service. Initial Appeal File (IAF), Tab 4 at 48, 51. He was removed because he inadvertently[2] brought a loaded handgun with a chambered round into the depot on September 17, 2013. *Id.* at 41. He had parked in the secure "U" lot at the depot, where he left the gun in his unlocked vehicle. *Id.* at 41-42. Although the appellant had a Pennsylvania weapons permit, weapons of any kind (except those carried by security personnel) were not allowed on depot grounds, particularly in the controlled area where the "U" lot was located. *Id.* at 38, 41-43. Bringing a weapon into the facility under circumstances like the ones here violates Tobyhanna Army Depot Regulation No. 190-3. IAF, Tab 4 at 42, 119-22.

---

[2] The appellant testified that he had unknowingly left the gun in his truck. Hearing Compact Disc (HCD) (testimony of appellant); *see* IAF, Tab 4 at 26. However, the appellant's work group leader, M.O., testified that he also made a disturbing and vaguely threatening remark regarding the Washington Navy Yard shooting, and both M.O. and H.S., his supervisor, opined that he had been behaving oddly. HCD (testimony of M.O., H.S.); IAF, Tab 4 at 29-30, 33-34.

¶3    The depot director, J.O., placed the appellant in a paid nonduty status on September 18, 2013, after the facility's Insider Threat Mitigation Team (ITMT) met.[3]  *Id.* at 19; HCD (testimony of M.R.).  The incident occurred the day after the shooting at the Washington Navy Yard took place in Washington, D.C.  *See* Mark Berman, Shooting at Washington Navy Yard, Washington Post, *http://www.washingtonpost.com/blogs/liveblog/wp/2013/09/16/shooting-at-washington-navy-yard/* (last visited Jan. 20, 2015).  The depot was already on alert, and the appellant's firearms violation raised considerable concern.  HCD (testimony of M.R.).

¶4    After an investigation, the appellant's supervisor, H.S., proposed his removal on a single charge of Failure to Observe Written Regulations, Orders, Rules, or Procedures.  IAF, Tab 4 at 41-46.  The notice of proposed removal had no attachments, but stated that the appellant could review the underlying evidentiary material upon which the proposal relied.  *Id.* at 46.  The appellant provided an oral response to the deciding official, M.R., Chief of the C4ISR Finishing Division, who sustained the charge and removed the appellant effective February 28, 2014.  *Id*. at 48-55.  The appellant appealed to the Board, IAF, Tab 1, and after a hearing, the administrative judge issued an initial decision reversing the removal action on grounds that the agency had violated his right to due process, IAF, Tab 29, Initial Decision (ID).  The agency filed a petition for review.  Petition for Review (PFR) File, Tab 1.

¶5    In the initial decision, the administrative judge found that the appellant did not receive and did not have an opportunity to respond to all of the evidence upon which the decision was made.  ID at 4-7.  The notice of proposed removal referred only to the appellant's act of bringing a loaded firearm into the depot and leaving it in his unlocked vehicle in the secured parking lot—conduct that

---

[3] The ITMT is comprised of senior personnel from several depot divisions, including security, human resources, and operations, as well as the facility director, J.O.  *See* Petition for Review File, Tab 1 at 9.

violated depot security regulations. IAF, Tab 4 at 41-42. The decision letter focused on the same set of facts as the proposal notice. *Id*. at 48-55. However, the deciding official testified that he considered other information to which the appellant had not been given the opportunity to respond. *See* HCD (testimony of M.R.).

¶6 The administrative judge found that the deciding official had been strongly influenced by the events that had transpired in the Washington Navy Yard the day before the present incident occurred. ID at 2, 5-7; *see* HCD (testimony of M.R.). M.R. testified that, after hearing the appellant's oral response, he was so concerned that he reconvened the ITMT to obtain its guidance. HCD (testimony of M.R.). M.R. said that he discussed the evidence with the team. *Id.* The team members concluded that the lesser penalty of suspension was unworkable and that removal was "the proper way to handle things." *Id.* The team members each offered an opinion as to the proper decision under the circumstances and they unanimously asserted that the appellant must be removed. *Id.* They also provided M.R. with information about two comparators, both of whom also had been removed. *Id.*

¶7 Although M.R. testified that he considered the removal decision to be his own, the administrative judge found M.R.'s testimony to be "somewhat tentative," and observed that he was "of 'entirely the same opinion'" as the team. ID at 6; *see* HCD (testimony of M.R.). The administrative judge also noted that the ITMT members' recommendations likely had a powerful influence on M.R., given that the team included representatives with considerable expertise in security and human resources. ID at 6. Additionally, the depot director, J.O., was a team member, and he was also the official who decided to place the appellant on administrative leave a few days after the incident. ID at 6. The administrative judge found that the director's input likely affected M.R.'s decision. ID at 6. The administrative judge also found that the appellant had neither been told of the team's involvement nor had he been given the opportunity

to respond to the conclusions reached by the team. ID at 6. He likewise was not told about the comparators that the team discussed. ID at 6. The administrative judge found the latter especially troubling because the appellant had raised the issue of disparate penalties as an affirmative defense. ID at 6. He concluded that the deciding official's consultation with the team was an "unexpected expansion of the decision process" and the comparator material was new and material ex parte information. ID at 6.

¶8    The administrative judge additionally found that M.R. gave much weight to an allegedly threatening comment that the appellant made in the presence of M.O., his work leader. *Id.* M.R. admitted that the comment "had a lot of effect" on his decision in light of the Navy Yard shooting, and that the ITMT had also given the comment significant weight. HCD (testimony of M.R.). The comment and the agency's perception of it, however, were neither mentioned in the notice of proposed removal and notice of removal, IAF, Tab 4 at 41-36, 48-55, nor discussed during the appellant's oral reply, *see* HCD (testimony of M.R.)[4]; IAF, Tab 27. Finally, the administrative judge determined that M.R. appeared to have been unduly influenced by the appellant's admission that his 9-year-old son sat next to the gun in his vehicle the night before the incident occurred, an "exogenous fact that was unrelated to the charge and pertained to off-duty conduct." ID at 7 n.3; *see* HCD (testimony of M.R.). For all of these reasons, the administrative judge reversed the removal decision. ID at 7.

¶9    The Due Process Clause of the Fifth Amendment requires an agency to afford an employee notice of the charges against him and of the agency's supporting evidence and to give that employee an opportunity to respond before effecting his removal. *See Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011); *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1375 (Fed. Cir. 1999). If the deciding official receives information relevant to an

---

[4] M.R. testified that he "didn't know the answer" as to why the purported threat was not discussed during the appellant's oral reply. HCD (testimony of M.R.).

employee's removal proceeding, and the employee does not receive notice of the evidence being used against him and an opportunity to respond to it, his right to due process may have been violated. *See Ward*, 634 F.3d at 1280; *Stone*, 179 F.3d at 1376. However, only ex parte communications that introduce new and material information to the deciding official constitute due process violations. *See Ward*, 634 F.3d at 1279.

¶10    To determine if an ex parte contact is constitutionally impermissible, the Board will consider factors that include whether: (1) the ex parte communication merely introduces "cumulative" information or new information; (2) the employee knew of the communication and had a chance to respond to it; and (3) the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Stone*, 179 F.3d at 1377. The third factor, undue pressure, loses relevance in determining whether the ex parte communication deprived the employee of due process where the deciding official admits that the ex parte communication influenced his determination. *Young v. Department of Housing & Urban Development*, 706 F.3d 1372, 1377 (Fed. Cir. 2013); *see Ward*, 634 F.3d at 1280 n.2. Due process also requires that the ultimate decision sustaining a proposed disciplinary action be made by the named deciding official, and not by some other individual. *See Fontes v. Department of Transportation*, 51 M.S.P.R. 655, 668 (1991). Ultimately, though, the Board's inquiry in deciding whether an employee's due process rights have been violated is "whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Stone*, 179 F.3d at 1377. If the Board so answers affirmatively, he is entitled to "a new constitutionally correct removal procedure." *Id.*

¶11    On review, the agency seeks to minimize the extent and severity of its actions found to violate the appellant's right to due process. The agency asserts that the ITMT was acting according to guidance issued by the Office of Personnel

Management when it made its recommendations to the deciding official. PFR File, Tab 1 at 8-9. The agency explains the team's composition, role, and functions at some length. *Id.* The agency argues that convening a team meeting was the appropriate response to the incident based on the specific circumstances here, i.e., the appellant both brought a loaded weapon to the depot and made comments that M.O. construed as threatening. *Id.* at 9. The agency explains that the team functioned as it should have under the circumstances. *Id.* The agency further explains that the team's intention was not to discuss the appellant's removal, but "to determine the best way to reduce any perceived threat to the workforce at [the depot] and to protect the safety of all of the employees in light of the appellant's actions" and of the recent Navy Yard shooting. *Id.* at 10.

¶12      Our concern is not with the agency's response to any threat posed by the appellant's act of leaving a loaded handgun in his unlocked vehicle while parked at the depot. The Board has no authority to determine whether the ITMT properly performed its intended function. Instead, we must ensure that the agency afforded the appellant his right to due process. The agency undisputedly failed to give the appellant all of the information that the deciding official used in reaching his decision, especially regarding the role of the ITMT, which influenced M.R.'s deliberations significantly.[5]   ID at 6. The agency seems to suggest that M.R.'s active participation on the team was mandatory; however, the

_____

[5] Although M.R. testified that he did not receive new information from the ITMT and that the decision to remove the appellant had been his own, the administrative judge found his testimony to be "tentative," i.e., less than completely credible, and cited other testimony in which the deciding official all but admitted he was influenced by team members. ID at 6; *see* HCD (testimony of M.R.). An administrative judge must consider such factors as the contradiction of the witness's version of events by other evidence or its consistency with other evidence, the inherent improbability of the witness's version of events, and the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). The Board must give deference to an administrative judge's credibility determinations when they are based, as they are here, on the observation of the demeanor of witnesses testifying at a hearing. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

Chief of the C4ISR Finishing Division is not on the permanent list of team participants.[6] *See* PFR File, Tab 1 at 8-9. In light of his role as the deciding official, the agency could have allowed M.R. to give input to the team as appropriate, but excluded him from any discussion of the appellant's disposition. *See Fontes*, 51 M.S.P.R. at 668 (the deciding official, not some other individual, must make the ultimate decision sustaining a proposed disciplinary action).

¶13    Additionally, we are concerned that information about the potential comparators discussed in team meetings was neither given to the appellant nor mentioned in the notice of proposed removal or decision letter. *See* HCD (testimony of M.R., H.S.); IAF, Tab 4 at 41-46, 48-55, Tab 23 at 22-23, Tab 24. When an agency intends to rely on certain aggravating facts in sustaining a charge or setting a penalty, those facts must be provided in the proposal notice to allow the appellant a fair opportunity to respond to them. *See generally Bennett v. Department of Justice*, 119 M.S.P.R. 685, ¶ 7 (2013). Although the agency stated in the notice of proposed removal that comparator information would be considered, *see* IAF, Tab 4 at 43, such statement is part of a boilerplate recitation of the factors to be considered in the penalty decision.

¶14    Likewise, the deciding official relied upon M.O.'s and H.S.'s statements to the investigator, J.D., regarding a comment that the appellant made that they interpreted as threatening. *See* HCD (testimony of M.R.); IAF, Tab 4 at 29-31, 33-35, 37-39. The appellant also did not receive that information. That the agency informed the appellant of his "right to review the materials relied upon to support the reasons given" for taking the action, *see* IAF, Tab 4 at 46, is somewhat mitigating, but not to the extent that the agency argues, *see* PFR File,

---

[6] The permanent list of participants includes: Chief, Security Division, D/Industrial Risk Management (Chairperson); Chief of Staff, Tobyhanna Army Depot (or designee); Chief Medical Officer, U.S. Army Occupational Health Clinic-Tobyhanna; Army Substance Abuse Program Manager; Employee Assistance Program Manager; Legal Advisor, Legal Office; and Chief, Management Employee Relations. PFR File, Tab 1 at 9.

Tab 1 at 7, 10-11. M.R. failed to discuss factors that he admitted influenced his thinking during his meeting with the appellant for the oral response. HCD (testimony of M.R.); *see* IAF, Tab 27. Although it is true that the appellant voluntarily submitted a statement from his mental health counselor during his oral reply, *see* IAF, Tab 4 at 49, Tab 27, the standard language in the notice of proposed removal encouraged him to seek counseling, *see* IAF, Tab 4 at 46. The fact that he followed the agency's advice is insufficient to place this appeal into the same category as the case of *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶¶ 10-11 (2014) (where the appellant raised and addressed uncharged misconduct in her written and oral replies, the deciding official's consideration of that conduct did not violate her right to due process). In any event, the deciding official admitted that the ex parte communications influenced his determination. *See Young*, 706 F.3d at 1377 ("the third *Stone* factor, undue pressure, is less relevant to determining whether the ex parte communications deprived the employee of due process where . . . as here, the deciding official admits that the ex parte communications influenced her determination"). Taken together, we must conclude that all of these factors prejudiced the appellant, and accordingly, we affirm the initial decision and reverse the removal. The agency may not remove the appellant unless and until he is afforded a new "constitutionally correct removal procedure." *See Stone*, 179 F.3d at 1377; *see also Ward*, 634 F.3d at 1280.[7]

---

[7] In correcting the removal action, we make no finding at this time as to whether the agency may place the appellant in an administrative leave status, as opposed to returning him to his former job. *See, e.g.*, *Tyler v. U.S. Postal Service*, 62 M.S.P.R. 509, 514 n.2 (1994) (when a suspension is reversed for procedural reasons and the agency believes that the employee is a danger to himself or others, the agency may place the employee on short-term administrative leave while instituting a suspension that complies with due process); *cf.* Federal Personnel Manual, chapter 630, subchapter 11 (Sept. 23, 1991) (agency heads have authority to grant administrative leave in limited circumstances for the benefit of the agency's mission).

**ORDER**

¶15      We ORDER the agency to cancel the removal and to retroactively restore the appellant effective February 28, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶16      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶17      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶18      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶19      For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD: _____
William D. Spencer
Clerk of the Board

Washington, D.C.



| | **DFAS CHECKLIST** |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.