**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 39**

Docket No. AT-0432-14-0867-I-1

**Lorena Mathis,**

**Appellant,**

**v.**

**Department of State,**

**Agency.**

June 4, 2015

John V. Berry, Esquire, and Alison R. Wills, Reston, Virginia, for the
appellant.

Elizabeth R. Amory, Charleston, South Carolina, for the agency.

Anne Joyce, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action based on her unacceptable performance under chapter 43 of Title 5 of the United States Code.  For the reasons set forth below, we DENY the petition for review, AFFIRM the initial decision AS MODIFIED, and SUSTAIN the removal action.

BACKGROUND

¶2 The agency removed the appellant, formerly a GS-11 Passport Specialist, effective July 3, 2014, for unacceptable performance in Critical Performance Element 1, Work Commitment 1C, which sets forth the minimum requirements for accuracy and efficiency in passport adjudication. Initial Appeal File (IAF), Tab 4 at 28-31 (proposed removal), 222-28 (decision notice), 233 (Standard Form 50). The appellant appealed the removal to the Board, asserting that the agency had failed to consider mitigating circumstances and alleging affirmative defenses of harmful procedural error, disability discrimination, and due process violations based on an alleged ex parte communication between the deciding official and a human resources (HR) representative after the oral reply.[1] IAF, Tab 1 at 6, Tab 11 at 8-24, Tab 13. After holding the appellant's requested hearing, the administrative judge affirmed the removal, finding that the agency established that the appellant's performance was unacceptable in one critical element and that she failed to prove a harmful procedural error or due process violation. IAF, Tab 14, Initial Decision (ID). The appellant has filed a petition for review of the initial decision, wherein she challenges only the administrative judge's finding that the ex parte communication did not violate her due process right to a constitutionally-correct removal procedure. Petition for Review (PFR) File, Tab 1. The agency has responded in opposition to the appellant's petition for review, and she has replied to the agency's opposition. PFR File, Tabs 3-4.

¶3 The undisputed facts are that, from September 16, 2013, to October 30, 2013, the appellant was placed on a performance improvement plan (PIP) due to her failure to meet the minimum requirements of Work Commitment 1C of her

---

[1] The appellant, through her attorney, withdrew her disability discrimination claim during the prehearing conference. IAF, Tab 13. The appellant did not object to the administrative judge's characterization of the withdrawal below and has not done so on review. *See* Petition for Review File, Tabs 1, 4.

performance standards. IAF, Tab 4 at 34-36, 68-72. At the end of the PIP, the appellant's supervisor rated her performance during the PIP as acceptable but informed her that, if she resumed unacceptable performance within 1 year, she might be subject to an adverse action without an additional period to improve. *Id.* at 74. On March 19, 2014, the agency proposed to remove the appellant for unacceptable performance in Work Commitment 1C—specifically, failure to adjudicate an average of fifteen to seventeen passport applications per hour between November 1, 2013, and March 14, 2014. *Id.* at 28-31. The appellant replied to the proposed removal orally and in writing, asserting, among other things, that computer outages and her work on more complex "derivative cases" had lowered her production rate and that the agency had ignored her requests for a reasonable accommodation. *Id.* at 171-77, 218-20.

¶4    Shortly after the oral reply, on April 24, 2014, the deciding official emailed an HR representative seeking information about the appellant's alleged mitigating circumstances. *See* IAF, Tab 12 at 93. Specifically, the deciding official asked: whether computer outages had affected the production rates of other passport specialists in the "same way" as the appellant; whether the appellant had correctly represented the policy regarding how cases, including "derivative cases," were counted in the Management Information System (MIS); and whether the Disability and Reasonable Accommodation Division (DRAD) had correctly handled the appellant's reasonable accommodation request. *See id.* The HR representative responded that: other employees in the office had not shown a downturn in production during the same period; MIS would typically be corrected to make production allowances in the event of a significant computer outage; derivative cases were part of a passport specialist's normal work and "drive" the GS-11 grade level; and the appellant never sent any information to DRAD, although she had been provided information on the reasonable accommodation process. *See id.* at 92-93.

¶5        On July 13, 2014, the deciding official imposed the removal. IAF, Tab 4 at 222-25. In the decision notice, the deciding official rejected the appellant's allegations that computer outages and derivative cases had lowered her production rate, explaining that the office's practice was to "issue specific instructions about any allowances that should be made in the MIS system when there have been significant system outage issues" and that "[s]ome derivative cases may be included in a single batch, but batches are not made up primarily of derivative cases." *Id.* at 224. Further, the deciding official explained that the appellant had failed to provide any details about "how or when" she was allegedly discouraged from filing the paperwork to request a reasonable accommodation and that he did not credit her claim. *Id.* at 225.

## ANALYSIS

¶6        As stated above, the sole issue raised by the appellant on review is whether the administrative judge erred in finding that the ex parte communication did not violate her due process rights. *See* PFR File, Tab 1 at 5-13. Pursuant to the U.S. Court of Appeals for the Federal Circuit's decisions in *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed. *See Norris v. Securities & Exchange Commission*, 675 F.3d 1349, 1354 (Fed. Cir. 2012); *see also Gray v. Department of Defense*, 116 M.S.P.R. 461, ¶ 6 (2011). The Board has held that an employee's due process right to notice extends to both ex parte information provided to a deciding official and information known personally to the deciding official, if the information was considered in reaching the decision and not previously disclosed to the appellant. *Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶ 7 (2012). *Ward*, *Stone*, and their progeny recognize,

however, that not all ex parte communications rise to the level of due process violations; rather, only ex parte communications that introduce new and material information to the deciding official are constitutionally infirm. *Id.*, ¶ 8.

¶7        In *Stone*, the Federal Circuit identified the following factors to be used to determine if ex parte information is new and material:  (1) whether the ex parte information introduced cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. *Stone*, 179 F.3d at 1377. Ultimately, we must determine whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances. *Id*.

¶8        In this case, the administrative judge considered the *Stone* factors and determined that:  (1) the information contained in the ex parte communication was new information because, prior to the ex parte communication, the deciding official did not have anything in his possession that described what happened when system outages occurred; and (2) the appellant did not have an opportunity to respond to the information; but (3) the general procedural information supplied by the HR representative was "highly unlikely" to put any pressure on the deciding official to rule in any particular manner, and the evidence showed that the deciding official was already inclined to sustain the removal when he sent the email in question. ID at 14-15.  Thus, the administrative judge concluded that the ex parte communication did not violate the appellant's due process rights.  ID at 15.

¶9        Reviewing the first *Stone* factor, we note that the Board has recently explained that a deciding official does not violate an employee's right to due process when he considers issues raised by an employee in her response to the proposed adverse action and then rejects those arguments in reaching a decision.

*Grimes v. Department of Justice*, 122 M.S.P.R. 36, ¶ 13 (2014) (citing *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶ 11 (2014), *aff'd*, 595 F. App'x 995 (Fed. Cir. 2015)); *see* 5 C.F.R. § 752.404(g)(1) (stating that, in rendering a decision on a proposed adverse action, the agency will consider the reasons specified in the notice and any answer of the employee or her representative, or both, made to a designated official). In so holding, the Board explained that an employee is not entitled to know the particular weight the deciding official will attach to her arguments raised in response to the proposed adverse action in advance of the final decision. *Grimes*, 122 M.S.P.R. 36, ¶ 13 (citing *Wilson*, 120 M.S.P.R. 686, ¶ 12). Thus, in the instant case, the deciding official did not violate the appellant's due process rights insofar as he considered, but was not persuaded by, her allegations of mitigating circumstances in reaching his decision to impose the proposed removal.

¶10 Moreover, a deciding official does not violate an employee's due process rights by initiating an ex parte communication that only confirms or clarifies information already contained in the record. *Blank v. Department of the Army*, 247 F.3d 1225, 1229 (Fed. Cir. 2001). In *Blank*, the agency proposed the employee's removal based on three charges of misconduct. *Id.* at 1226. After the employee submitted a written response disputing the charges, the deciding official interviewed a number of agency employees in order to determine whether there were inconsistencies in the agency's case and whether the facts supported the employee's defenses of discrimination and hostile work environment. *Id.* at 1227. The administrative judge found, and the court agreed, that the information obtained from the interviews was merely cumulative of the documentary evidence already assembled to support the notice of proposed removal. *Id.* at 1229. As such, the court explained that ex parte communications like the ones at issue in *Blank* are not proscribed by *Stone*; rather, investigatory interviews and communications that do no more than confirm or clarify pending charges do not introduce new and material information. *Id.* at 1229-30.

¶11        On the other hand, information obtained from an ex parte post-proposal investigatory interview may be considered new and material if it constitutes a significant departure from evidence already in the record and the deciding official considers it in reaching a decision. *See Young v. Department of Housing & Urban Development*, [706 F.3d 1372](#), 1375-78 (Fed. Cir. 2013). In *Young*, the agency proposed to remove the appellant based on disruptive conduct during an arbitration hearing recess. *Id.* at 1374-75. In his written reply, the appellant and a supporting witness denied the charge entirely and provided statements that they spent the whole recess together outside the hearing room. *Id.* However, during an ex parte interview with the deciding official, the witness later acknowledged that he and the appellant went to his cubicle during the recess so that he could check his email and attend to other matters. *Id*. at 1375. The deciding official found that the discrepancies in the witness's statements wholly undermined his credibility and led her to conclude that the appellant engaged in the charged misconduct. *Id*. She described the ex parte communication as a "huge" departure from written statements already on the record and admitted that the ex parte communications were the most critical statements in her mind. *Id.* at 1377. Given the "significant and overwhelming role that the new communication played in the termination decision," the court found that the ex parte communications in *Young* introduced new and material information as understood under the first *Stone* factor. *Id.*

¶12        In the instant case, the deciding official initiated ex parte communications with the HR representative to determine whether the appellant's alleged mitigating factors were supported by the facts. *See* IAF, Tab 4 at 171-77 (written response), 218-20 (agency notes from oral response), Tab 12 at 92-93 (ex parte email). In response, the HR representative essentially explained that the appellant's allegations were not accurate. *See* IAF, Tab 12 at 92-93. Unlike *Young*, the ex parte information in this case was consistent with the information already in the record and did not play a "significant and overwhelming role" in

the deciding official's decision to impose the proposed removal. *See Young*, 706 F.3d at 1377; *see also* IAF, Tab 4 at 222-25, Tab 12 at 92-93. Rather, as in *Blank*, the ex parte communication merely clarified or confirmed whether the allegations raised in the appellant's response to the proposed removal were supported by facts.[2] *See Blank*, 247 F.3d at 1227, 1229-30; *see also* IAF, Tab 12 at 92-93. As such, we disagree with the administrative judge's finding as to the first *Stone* factor that the information was new and modify the initial decision to find that the ex parte communication did not introduce new information.

¶13     As discussed above, the second factor the court found must be considered in determining whether ex parte information violated an appellant's due process rights is whether the employee knew of the information and had an opportunity to respond to it. *Stone*, 179 F.3d at 1377. The parties do not dispute that the appellant did not have an opportunity to respond to the information contained in the ex parte communication. *See* PFR File, Tabs 1, 3-4.

¶14     Regarding the third *Stone* factor, which concerns whether the ex parte communication was of the type likely to result in undue pressure upon the deciding official to rule in a particular manner, the appellant argues that the administrative judge improperly applied the harmful error doctrine. PFR File, Tab 1 at 12-13; *see* ID at 14-15. Under the harmful error doctrine, an agency's action is reversible only if the employee proves that the procedural error substantially prejudiced his rights by possibly affecting the agency's decision. *Tom v. Department of the Interior*, 97 M.S.P.R. 395, ¶ 43 (2004); *see Ward*,

---

[2] In *Shockley v. U.S. Postal Service*, 95 M.S.P.R. 264, ¶¶ 17-18 (2003), a nonprecedential split vote Board decision, *see* 5 C.F.R. § 1200.3(b), (d), then-Chairman Marshall expressed the view that a deciding official's ex parte communications aimed at determining the accuracy of statements made in an appellant's response to the proposed removal did not constitute a due process violation. To the contrary, she explained, a deciding official who fails to try to verify or clarify an appellant's allegations has arguably neglected his responsibilities as a deciding official. *Shockley*, 95 M.S.P.R. 264, ¶ 18 (separate opinion of Chairman Marshall).

634 F.3d at 1281. Harmful error cannot be presumed; the employee must show that the error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Tom*, 97 M.S.P.R. 395, ¶ 43. In contrast, if a deciding official receives new and material information by means of an ex parte communication, then a due process violation has occurred and the agency action must be reversed until such time as the agency conducts a new constitutionally-correct removal procedure. *Stone*, 179 F.3d at 1376. In other words, a due process violation is not subject to the harmful error test. *Id.*

¶15    The administrative judge does appear to have conducted a harmful error analysis in considering whether there was a due process violation in this appeal.[3] *See* ID at 14-15. Any such analytical error by the administrative judge is not reversible error, however, because the administrative judge also conducted the correct analysis, i.e., whether the information was *of the type likely to result in undue pressure* upon the deciding official. *See* ID at 14; *see also Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). Specifically, the administrative judge found, and we agree, that the "general procedural information" contained in the ex parte communication was not of the type of information likely to result in undue pressure upon the deciding official to rule in a particular manner. ID at 14.

¶16    Weighing all of the *Stone* factors, we find that the information contained in the ex parte communication was not "so likely to cause prejudice that no

---

[3] In his consideration of the third *Stone* factor, the administrative judge explained that testimonial and documentary evidence showed that the deciding official was already planning to impose the removal when he initiated the ex parte communication and that he did not change his mind after receiving the responses. *See* ID at 14-15. Consideration of whether the particular information conveyed in an ex parte communication actually influenced a deciding official is a harmful error analysis.

employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Stone*, 179 F.3d at 1377. Thus, we conclude that there was not a violation of the appellant's constitutionally guaranteed due process rights.[4]

¶17 Further, we find that the administrative judge properly sustained the performance-based removal under chapter 43. The administrative judge correctly found that the agency established the following factors by substantial evidence: (1) the agency took its action under a performance appraisal system approved by the Office of Personnel Management; (2) the performance standards were valid; (3) the appellant's performance in Work Element 1C was deficient as charged; and (4) the agency provided the appellant with a reasonable opportunity to demonstrate acceptable performance prior to effecting the removal action. ID at 6-12. On review, the appellant does not challenge these findings, and we discern no reason to disturb the administrative judge's well-reasoned findings. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *see also Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

ORDER

¶18 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

---

[4] We also find that, to the extent that the deciding official's communication with the HR representative may have constituted harmful procedural error, for the reasons discussed, the appellant has not shown that any such error was likely to have caused the agency to have reached a different conclusion about the removal action. *See Tom*, 97 M.S.P.R. 395, ¶ 43.

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services

provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.