# United States Court of Appeals for the Federal Circuit

---

**LEONARD BOSS,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2017-2231

---

Petition for review of an arbitrator's decision from the Federal Mediation and Conciliation Service in FMCS Case No. 13-50967-6 by Michael D. McDowell.

---

Decided: November 13, 2018

---

MICHAEL P. BARANIC, National Border Patrol Council, San Diego, CA, argued for petitioner.

DOMENIQUE G. KIRCHNER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, ROBERT E. KIRSCHMAN, JR., CLAUDIA BURKE.

---

Before DYK, O'MALLEY, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge.*

Mr. Leonard Boss, a U.S. Border Patrol Agent, challenges a 15-day suspension imposed by his employing agency, Customs and Border Patrol ("CBP"). The suspension was based on three charges. The arbitrator vacated Charge One after finding that the deciding official violated Mr. Boss's procedural due process rights, and he then reduced the suspension to ten days. Mr. Boss admits that Charges Two and Three, which the arbitrator did not vacate, are unrelated to the alleged due process violation. Nevertheless, he argues on appeal that Charges Two and Three should fall with Charge One. We do not agree. We hold that the arbitrator properly treated the three charges separately and independently. Accordingly, we affirm.

## BACKGROUND

In December 2011, the CBP Discipline Review Board sent Mr. Boss a proposed 30-day suspension based on three disciplinary infraction charges: (1) failure to follow policy related to overtime sheets, (2) failure to follow supervisory instructions, and (3) conduct unbecoming a U.S. Border Patrol Agent. Mr. Boss protested the proposed 30-day suspension. Accordingly, the deciding official began an investigation. The deciding official interviewed witnesses and received argument from both the agency and Mr. Boss. On October 26, 2012, the deciding official sent Mr. Boss a decision letter, concluding that Mr. Boss should be disciplined on all three charges, but reducing the suspension to 15 days.

Mr. Boss contested the deciding official's decision by requesting arbitration. During the arbitration hearing, the deciding official admitted that he had considered three documents that had not been provided to Mr. Boss or his union. All three documents were various agencies' policies regarding administratively uncontrollable overtime pay.

It is undisputed that the deciding official considered the documents without disclosing them to Mr. Boss or his union. Indeed, the government did not give the documents to Mr. Boss or his union until the arbitration proceeding. During arbitration, Mr. Boss protested that the agency therefore violated his constitutional and contractual due process rights. The arbitrator agreed that the agency violated the contractual due process provision, and vacated Charge One without reaching the constitutional due process objection as it related to Charge One.

The arbitrator found, and Mr. Boss agrees, that all three undisclosed documents "solely relate to" Charge One. J.A. 12; Oral Arg. at 3:06–3:21, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-2231.mp3; *see also id.* at 3:41–3:55. Accordingly, the arbitrator analyzed Charges Two and Three on their merits, apparently concluding that he need not address Mr. Boss's contractual and constitutional due process arguments. Ultimately, the arbitrator concluded that the agency carried its burden of proof for Charges Two and Three.

Having resolved Charges Two and Three on the merits, the arbitrator turned to the proposed 15-day suspension. The agency bore the burden of showing the propriety of the 15-day suspension, which the arbitrator reviewed under the applicable *Douglas* factors. *See Douglas v. Veterans Admin.*, 5 M.S.P.B. 313 (1981). Balancing those factors and noting that he had vacated Charge One, the arbitrator reduced the discipline to a 10-day suspension. J.A. 31.

Mr. Boss appealed to this court. He argues that the arbitrator should have completely set aside the discipline until the agency conducted "a new constitutionally-correct disciplinary or adverse action procedure." Appellant Br. 2. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

I

We review an arbitrator's award pursuant to 5 U.S.C. § 7121, "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. § 7121(f); *Dixon v. Dep't of Transp.*, 8 F.3d 798, 803 (Fed. Cir. 1993). Thus, we affirm the arbitrator's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence[.]" 5 U.S.C. § 7703(c); *Dixon*, 8 F.3d at 803. "[W]e must reverse an arbitrator's decision if it is not in accordance with the requirements of the Due Process Clause of the Fifth Amendment or any other constitutional provision." *Young v. Dep't of Hous. & Urban Dev.*, 706 F.3d 1372, 1376 (Fed. Cir. 2013) (citing *Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1278 (Fed. Cir. 2011)). Mr. Boss bears the burden of establishing that the arbitrator committed reversible error. *See Fernandez v. Dep't of the Army*, 234 F.3d 553, 555 (Fed. Cir. 2000).

II

Although Mr. Boss agrees that Charges Two and Three were untainted by any procedural error, Mr. Boss asserts that because the deciding official violated his constitutional right to procedural due process as to Charge One, the Board should entirely set aside his discipline until the agency conducts a new, constitutionally correct disciplinary procedure. We disagree.

A

We begin with a review of the law proscribing *ex parte* communications in employment discipline. In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985), the Supreme Court explained that before a public

employee can be deprived of his property interest in continued employment, he must receive notice and an opportunity to respond:

> The tenured public employee is entitled to oral or written notice of the charges against him, *an explanation of the employer's evidence*, and an opportunity to present his side of the story. . . . To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill*, 470 U.S. at 546 (emphasis added).

In *Stone v. F.D.I.C.*, 179 F.3d 1368 (Fed. Cir. 1999), we applied *Loudermill*'s requirements—including that the employee receive an explanation of the employer's evidence—to *ex parte* communications. We held that "[t]he introduction of new and material information by means of *ex parte* communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond." *Id.* at 1376. *Stone* provided a three-factor test to assess whether a particular *ex parte* communication violates due process: (1) whether the *ex parte* communication merely introduces "cumulative" information or new information; (2) whether the employee knew of the error and had a chance to respond to it; and (3) whether the *ex parte* communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Id.* at 1377.

B

The parties dispute whether the contractual due process violation as to vacated Charge One[1] mandates a full, new disciplinary review based on Charges Two and Three. Mr. Boss relies on our holding in *Stone* that, if there is a constitutional due process violation, "the former employee is entitled to a new constitutionally correct removal procedure." *Id.* He further relies on our precedent in *Sullivan v. Department of the Navy*, 720 F.2d 1266, 1274 (Fed. Cir. 1983), and *Ryder v. United States*, 585 F.2d 482, 487–88 (Ct. Cl. 1978) (*superseded* by statute as noted in *Adams v. Dep't of Transp., F.A.A.*, 735 F.2d 488, 496 (Fed. Cir. 1984) (Nies, J., concurring)), for the proposition that, when a procedural due process violation has occurred because of *ex parte* communications, such a violation is not subject to the harmless error test. Thus, Mr. Boss argues, all the charges should fall together.

The government responds that Mr. Boss cites no authority for the contention that a notice violation pertaining to one charge would require that the arbitrator vacate other charges of misconduct that were separate and distinct. Appellee Br. 41–42. As the government explains, analysis of the *Stone* factors serves to ensure the employee's notice of the charges, explain the government's evidence, provide the employee an opportunity to respond, and protect the deciding official's objectivity. *Id.* at 41 (citing *Stone*, 179 F.3d at 1376). Furthermore, the government argues, there is no legal basis that would require the arbitrator to vacate Charges Two and Three for an alleged constitutional violation of insufficient notice that

---

[1] Here, neither party disputes that the arbitrator properly vacated Charge One based on the contractual due process claim. Having vacated Charge One, there was no need for the arbitrator to reach the constitutional due process claim relating to the vacated charge.

Mr. Boss admits pertained solely to Charge One. *Id.* at 42. We agree. We hold that the constitutional due process analysis should be applied on a charge-by-charge basis. This is particularly so in this case, where it is conceded that the undisclosed documents were not material to Charges Two and Three. *See id.* Such an approach is consistent with the purposes behind *Loudermill* and *Stone*.

The concept of procedural fairness is the ultimate focus of the *Stone* inquiry and is also our focus here. As this court recognized in *Stone*, "not every *ex parte* communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding." 179 F.3d at 1376–77. Only *ex parte* communications that introduce new and material information likely to result in undue pressure on the deciding official to rule in a particular manner will violate the due process guarantee of notice. *Id.* at 1377. In this case, it is difficult to see how the undisclosed documents relevant only to Charge One could result in undue pressure on the deciding official in his analysis of Charges Two and Three.

We acknowledge our holding in *Stone* that "when a procedural due process violation has occurred because of *ex parte* communications, such a violation is not subject to the harmless error test." *Id.* (first citing *Sullivan*, 720 F.2d at 1274; then citing *Ryder*, 585 F.2d at 488). That prohibition on applying the harmless error test, however, is directed to foreclosing the argument that an employee would have been removed from his position on the merits even without the procedural defect in his firing. *Sullivan*, 720 F.2d at 1273–74 (citing *Ryder*, 585 F.2d at 486–87). We do not fall into that trap here, because we do not analyze whether Mr. Boss would have been disciplined for Charge One even without the alleged procedural defect.

Instead, the analysis we apply is that, by the admission of the parties, the challenged documents were not relevant, new, or material to the remaining charges. Oral Arg. at 3:41. Thus, they were unlikely to cause the kind of prejudice the court was concerned about in *Stone*. Indeed, in this case, the arbitrator simply determined how long of a suspension Charges Two and Three, standing alone, would merit. Furthermore, *Stone* is of limited applicability here because it only involved one charge, whereas this case involves multiple, distinct charges.

We note, too, that post-*Stone*, the Supreme Court in 2009 clarified how courts should apply harmless error:

> The federal "harmless-error" statute, now codified at 28 U.S.C. § 2111, tells courts to review cases for errors of law "without regard to errors" that do not affect the parties' "substantial rights." That language seeks to prevent appellate courts from becoming " 'impregnable citadels of technicality,' " [*Kotteakos v. United States*, 328 U.S. 750, 759 (1946)]. And we have read it as expressing a congressional preference for determining "harmless error" without the use of presumptions insofar as those presumptions may lead courts to find an error harmful, when, in fact, in the particular case before the court, it is not.

*Shinseki v. Sanders*, 556 U.S. 396, 407–08 (2009). Adopting Mr. Boss's approach of vacating the entire proceeding without undertaking a charge-by-charge analysis would "increase the likelihood of reversal in cases where, in fact, the error is harmless," contrary to the Supreme Court's admonition. *Id.* at 409. Therefore, we reject Mr. Boss's invitation to vacate the entire proceeding. In the absence of evidence indicating that the procedural defect tainted the decision-making on the other charges, or circumstances where the charges are so factually interrelated that they cannot be fairly separated, we hold

that an error as to one charge can be harmless as to the other charges.

Our holding is further supported by analogous cases addressing constitutional due process errors in the criminal context. In *United States v. Job*, the Ninth Circuit held that evidence obtained from an unconstitutional search contributed only to the verdict on one count, so the verdict on the other count was allowed to stand. 871 F.3d 852, 865–67 (9th Cir. 2017) (concluding beyond a reasonable doubt that the admission of the evidence did not contribute to the verdict on the second count). In *United States v. Cameron*, the First Circuit upheld certain counts of the conviction notwithstanding that certain evidence had been admitted in violation of the defendant's Confrontation Clause rights because the evidence was not even relevant, much less "central," to those counts. 699 F.3d 621, 627, 652–53 (1st Cir. 2012). Because the defendant's trial was a bench trial, the convictions were not tainted with any "spillover" prejudice from the improperly admitted records. *See id.* at 652 (citing *United States v. Meises*, 645 F.3d 5, 24 n.26 (1st Cir. 2011) ("Constitutional errors, such as a Confrontation Clause violation, require reversal unless shown to be harmless beyond a reasonable doubt.")). Other circuits have held similarly. *See Earhart v. Konteh*, 589 F.3d 337, 346, 351 (6th Cir. 2009) (holding defendant not entitled to habeas relief as to four charges on which he was convicted, but granting as to one charge); *United States v. Brooks*, 772 F.3d 1161, 1171–73 (9th Cir. 2014) (holding procedural due process error harmless with respect to two of three counts for which defendant was convicted); *United States v. Kizzee*, 877 F.3d 650, 661–62, 661 n.4 (5th Cir. 2017) (holding disputed testimonial statements irrelevant to one of three counts for which defendant was convicted); *United States v. Smith*, 640 F.3d 358, 364 (D.C. Cir. 2011) (holding Confrontation Clause error affected only one count out of four counts of conviction).

This history of analyzing due process violations charge-by-charge in the criminal context and its acceptance in the Federal Judiciary supports our decision to take the same approach when analyzing alleged constitutional due process errors in the civil context. *Cf. Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–68 (2011) (extending willful blindness from a criminal context to civil lawsuits for induced patent infringement).

Nonetheless, Mr. Boss asserts that the discipline should be entirely set aside. He posits that due process cannot be analyzed on a charge-by-charge basis because this court has never before considered or endorsed such an approach. Appellant Reply Br. 5–7. Mr. Boss relies on *Young* for his argument that he is entitled to an entirely new proceeding on Charges Two and Three because there was an alleged constitutional due process violation on Charge One. *See Young*, 706 F.3d 1372. In *Young*, a deciding official received new and material information regarding a single charge by means of *ex parte* communications. We held that the *ex parte* communications violated the employee's due process rights, so the employee was entitled to a new, constitutionally correct proceeding. *Id.* at 1378. We find Mr. Boss's reliance on *Young* misplaced because *Young* did not involve multiple charges with distinct facts. Here, we would apply *Young*'s single-charge analysis if we were considering Charge One. Mr. Boss concedes that the undisclosed documents do not apply to Charges Two and Three. Because the alleged constitutional due process violation applied only to Charge One, which the arbitrator vacated, *Young* does not require a new proceeding on Charges Two or Three.

Mr. Boss also argues that the Merit Systems Protection Board has consistently held that, if the Administrative Judge finds lack of due process, the merits of the adverse action are wholly disregarded under *Stone*, and the Administrative Judge should not make alternate findings on the merits of the case. We acknowledge that

the Board has so held in single-charge cases and in multi-charge cases where the error has infected all the charges. Although we are not bound by them, we address the specific Board decisions cited by Mr. Boss in turn.

First, Mr. Boss's reliance on the Board's decision in *Giannantonio v. United States Postal Service*, 111 M.S.P.R. 99, 101 ¶ 5 (2009), is misplaced because it, like *Stone*, only involved a single charge. There, the Board found that the Administrative Judge's "alternative" finding was actually a contradictory finding on the merits, that is, a finding that assuming no due process violation, the agency proved the charge. As discussed above, we do not undertake the hypothetical of whether, if there had been no due process violation, the agency would have proven Charge One. Instead, we reason that, because the alleged due process violation was not relevant to Charges Two and Three, those charges could not have been infected.

Nor is Mr. Boss's reliance on *Camero v. United States*, *Sullivan*, and *Ryder* persuasive. In those cases, the "taint of *ex parte* communications from an adversary vitiated the entire removal proceeding." *Ryder*, 585 F.2d at 486 (discussing *Camero v. United States*, 375 F.2d 777 (Ct. Cl. 1967)); *see also Sullivan*, 720 F.2d at 1272 (citing *Ryder* for this proposition). In those cases, unlike here, the due process violation was found or admitted to affect all the charges in the case. For example, the *ex parte* communication in *Ryder* involved a memo from the employee's superior sent to the deciding official recommending a particular decision, which obviously impacted all the charges. The undisclosed documents here do not raise such a risk as it is undisputed that they did not relate to Charges Two and Three.

CONCLUSION

We see no error in the arbitrator's application of due process on a charge-by-charge basis in this case. We

conclude that there is no legal basis to vacate Charges Two and Three as a remedy for an alleged notice violation that was only relevant to Charge One. We do not find Mr. Boss's remaining arguments persuasive. Accordingly, we affirm.

## AFFIRMED

COSTS

No costs.