NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ELIAS FEUER,**
*Petitioner*

**v.**

**NATIONAL LABOR RELATIONS BOARD,**
*Respondent*

---

2019-1390

---

Petition for review of the Merit Systems Protection Board in No. NY-1221-17-0200-W-1.

---

Decided: September 13, 2019

---

ELIAS FEUER, New York, NY, pro se.

SONIA W. MURPHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge,* PLAGER and DYK, *Circuit Judges.*

PER CURIAM.

Elias Feuer appeals from the Merit Systems Protection Board ("Board") holding that the National Labor Relations Board ("NLRB") did not violate Feuer's rights under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), because (1) it did not take any personnel action against him and (2) the NLRB had shown by clear and convincing evidence that it would have taken the same action regardless of Feuer's protected disclosures. We reject the Board's first ground but *affirm* as to the second ground.

BACKGROUND

Feuer was employed as a lawyer at the NLRB for thirty-two years. In 2012, he was appointed to an Administrative Law Judge ("ALJ") position at the Social Security Administration ("SSA"). In July 2016, the NLRB posted an announcement for "more than one" ALJ vacancy located in the Washington, D.C. and New York, New York duty stations. The posting stated that "[c]andidates must currently hold an Administrative Law Judge position, at the AL-3 level or above for at least one year or be eligible for reinstatement to an ALJ position based on prior experience as an ALJ." J.A. 449. Feuer, who was qualified for the vacant positions, applied seeking an appointment to the New York position. He was not selected. Two other candidates were selected for the New York duty station and three candidates were selected for the Washington, D.C. duty station.

After learning of his non-selection, Feuer contacted the NLRB on five separate occasions with allegations of agency misconduct. Feuer claimed, *inter alia*, that one of the ALJs who had been selected for the New York position, Benjamin Green, did not meet the one-year requirement under the NLRB's posting. At the close of the posting, Green had less than one year of service as an ALJ at the SSA. After an internal investigation, the NLRB determined, in consultation with the Office of Personnel Management ("OPM"), that the one-year requirement was solely intended to

implement an OPM regulation that prohibited transfer of an ALJ to a new position within one year of the ALJ's last appointment without consent of the transferee and transferor agencies. The NLRB determined that on the date of his scheduled transfer from the SSA to the NLRB, Green would have served at his ALJ position for over one year and was therefore eligible under the regulation and the vacancy announcement. On November 13, 2016, the NLRB appointed Green to the New York position as it had originally planned to do before Feuer made his disclosures. On November 14, 2016, the agency mistakenly reposted the vacancy announcement before taking it down within one day.

Feuer appealed the agency's actions to the Board, alleging that the NLRB's decision not to select him for the allegedly vacant New York position after his protected disclosures and its subsequent decision not to select him in connection with the November 14 posting were made in retaliation for his whistleblowing activities. After a four-day hearing, the ALJ denied Feuer's appeal. The ALJ concluded that Feuer had made two protected disclosures: (1) an October 17, 2016 telephone call to Mark Pearce, Chairman of the NLRB, alleging that the NLRB engaged in age discrimination, nepotism, and violations of its standard hiring procedures and (2) an October 24 letter sent to Chairman Pearce wherein Feuer made the same allegations as his telephone call, as well as the allegation that Green's appointment was improper. The ALJ found that Feuer's disclosures satisfied the knowledge/timing test and were "contributing factors" under 5 U.S.C. § 1221(e)(1). However, the ALJ found that the retaliation that Feuer alleges—the agency's non-selection of Feuer for the New York position as well as its November 14 posting—were not "personnel actions" as defined by 5 U.S.C. § 2302(a)(2)(A). The ALJ also found that even if these events constituted personnel actions, the agency had proven by clear and convincing evidence that Feuer would not have been selected for the position.

Feuer did not seek review from the full Board, but instead timely filed a petition for review in our court. The ALJ's decision became the decision of the Board. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

Our review of Board decisions is limited to whether the decision was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Our review is "without regard to errors" that do not affect the parties' "substantial rights." 28 U.S.C. § 2111; *see also Boss v. Dep't of Homeland Sec.*, 908 F.3d 1278, 1282 (Fed. Cir. 2018).

Agencies may not take or fail to take personnel action against an employee in retaliation for a protected whistleblower disclosure. *See* 5 U.S.C. § 2302(b)(8). A protected disclosure is "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences . . . a violation of any law, rule, or regulation." *Kahn v. Dep't of Justice*, 618 F.3d 1306, 1311 (Fed. Cir. 2010) (alteration in original) (quoting 5 U.S.C. § 2302(b)(8)(A)). Personnel action includes non-selection for an appointment. *See Ellison v. Merit Sys. Prot. Bd.*, 7 F.3d 1031, 1034 (Fed. Cir. 1993); *Monasteri v. Merit Sys. Prot. Bd.*, 232 F.3d 1376, 1380 (Fed. Cir. 2000); *Ruggieri v. Merit Sys. Prot. Bd.*, 454 F.3d 1323, 1325 (Fed. Cir. 2006).

I

Feuer first argues that the Board erroneously found that he had made only two protected disclosures when he had in fact made five protected disclosures. The Board determined that Feuer made two protected disclosures: a telephone call to Chairman Pearce on October 17, 2016 and a letter sent to Chairman Pearce on October 24, 2016. Feuer alleges that the Board failed to consider his three

subsequent disclosures: a formal complaint filed with the NLRB Inspector General on October 28, 2016, a letter sent to the NLRB attorney Jennifer Kovachich on November 7, 2016, and an email sent to the Inspector General on November 8, 2016. The Board's analysis of Feuer's protected disclosures failed to mention these subsequent disclosures. Feuer's additional disclosures were substantively the same as his initial disclosures to Chairman Pearce with one exception. Feuer's November 7th letter and November 8th email included a new allegation that the agency intended to create a sham posting to hire the ineligible candidate. The Board erred when it failed to consider these three additional protected disclosures. However, consideration of these additional disclosures—which were largely the same as his earlier disclosures—would not have affected the result. Therefore, the Board's error was harmless. 28 U.S.C. § 2111.

## II

The Board held that Feuer had made protected disclosures and that because Feuer made his disclosures directly to the Chairman within one month of his alleged personnel actions, there was a presumption that Feuer's disclosures were "contributing factors" as defined under 5 U.S.C. § 1221(e)(1). But it held that there had been no personnel action (i.e. non-selection) because following his disclosure there had been no vacancy. The question of whether a vacancy existed because Green was not qualified depends on the interpretation of the vacancy announcement's requirement that "[c]andidates must currently hold an Administrative Law Judge position . . . for at least one year." J.A. 449.

The Board held that the posting "as a whole" was "somewhat ambiguous" and that the phrase "must currently" was subject to reasonable debate, and therefore deferred to the NLRB's interpretation that the one-year requirement was satisfied as long as Green had one year

service *at the time of his transfer*. J.A. 347–48. Feuer argues that the Board erred when, citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997) and *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 403 (2008), it deferred to the NLRB's interpretation of the phrase "must currently." Feuer urges that, absent this erroneous interpretation, the NLRB would have rescinded its offer to Green and Feuer would have been appointed as the "next highest ranked applicant."[1] Appellant's Br. 9. Feuer contends that the meaning of the phrase "must currently" in the one-year requirement is clear—the applicant must to hold an ALJ position for one year "by the time they submit their application, but no later than the application deadline." Appellant's Br. 7.

The NLRB contends that the language in the posting was intended to implement an OPM regulatory requirement, which recites: "[a]n agency may not transfer an individual from one administrative law judge position to another administrative law judge position within 1 year after the individual's last appointment, unless the gaining and losing agencies agree to the transfer." 5 C.F.R. § 930.204(h). Thus, the Board found that Green was eligible for the position and that the agency did not take personnel action against Feuer.

We conclude that the posting is not an interpretation of the regulation. Although the regulation is cited in the vacancy announcement, there is no citation to the regulation in the section on qualifications, and the regulation has nothing to do with the qualifications or experience level required for the position—the subject of the vacancy announcement's requirement. Therefore, the question is

---

[1]     Feuer also argues that the posting and cancellation of the November 14th vacancy announcement was a personnel action. In these circumstances an administrative error cannot constitute retaliatory personnel action under 5 U.S.C. § 2302(b)(8).

whether deference is due to an agency's interpretation of an agency document that is not a regulation, an issue as to which there is little authority. Even assuming *Auer*-like deference is owed in some circumstances to such interpretations, we think it is not owed here. First, no deference is due when the agency's interpretation does not reflect a "fair and considered judgment." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). Courts do not defer to an agency's "'convenient litigating position' or '*post hoc* rationalization advanced' to 'defend past agency action against attack.'" *Id.* (quoting *Christopher*, 567 U.S. at 155); *see also S. Cal. Edison Co. v. United States*, 226 F.3d 1349, 1357 (Fed. Cir. 2000) (noting that affording deference to agency interpretations of contract provisions "could lead the courts to endorse self-serving post-hoc reinterpretations of contracts that an agency might offer in the context of a litigation," especially when the agency is a party to the contract (citing *National Fuel Gas Supply v. Federal Energy Reg. Comm'n*, 258 U.S. App. D.C. 374, 811 F.2d 1563, 1571 (D.C. Cir. 1987))). No deference is due to the agency's interpretation adopted here in response to Feuer's allegations in the present controversy.

Second, as the Supreme Court has recently instructed, "a court should not afford *Auer* deference unless the regulation is genuinely ambiguous." *Kisor*, 139 S. Ct. at 2415 (citing *Christensen v. Harris County*, 529 U.S. 576, 588 (2000) and *Bowles* v. *Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). "[A] court must exhaust *all* the 'traditional tools' of construction" before making a finding of ambiguity. *Id.* (emphasis added) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, n.9 (1984)). The purpose of the vacancy announcement is to determine the qualifications and experience necessary for the position. The plain meaning of the phrase "currently" means "at present." *Webster's Third New International Dictionary* 557 (1986). In this context,

the vacancy announcement's use of the word "currently" must mean "at the time the posting closes." A requirement that an applicant "must currently" satisfy to be eligible for a position cannot be satisfied *after* the posting is closed. Such an interpretation would unreasonably read the word "currently" to mean "in the future" instead of the its proper meaning: "at present." This plain meaning is reinforced by the 2017 NLRB Administrative Policies and Procedures Manual, which requires that application requirements must be evaluated at the close of the posting or at a time otherwise expressly specified in the application. While not in effect at the time of Feuer's alleged personnel action, this Manual confirms that even the agency reads the plain meaning of "currently" to mean at the close of posting.

We hold that the Board erred in adopting the NLRB's interpretation of the phrase "must currently" in the vacancy announcement. As a result, we hold that the Board's finding that Green was eligible for the New York position was not supported by substantial evidence, and the agency took a personnel action against Feuer by not selecting him.

## III

However, our inquiry does not end there. The Board concluded that the NLRB had shown by clear and convincing evidence that it would not have selected Feuer for the position even in the absence of his protected disclosures under the nonexclusive three-factor test described in *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). "To be clear, *Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor." *Miller v. Dep't of Justice*, 842 F.3d 1252, 1257 (Fed. Cir. 2016) (internal quotations omitted). This court reviews the Board's finding of independent causation for substantial evidence. *Id.* at 1258.

The first *Carr* factor is "the strength of the agency's evidence in support of its personnel action." *Carr*, 185 F.3d

at 1323. In this case, the personnel action is the NLRB's rejection of Feuer's application in connection with the vacancy created by Green's ineligibility. Feuer argues that but for the NLRB's selection of an ineligible applicant, the agency would have selected him, the next most qualified applicant. Feuer contends that the NLRB has a "historical agency-wide practice" of hiring the next most-qualified candidate. Appellant's Br. 22. However, the NLRB provided evidence to show that it would not have automatically selected the next ranked candidate if Green had not been selected. This evidence included NLRB Policy and Procedure documents from the relevant time period that did not provide for such a practice as well as testimony from both the Chief Judge and Chairman of the NLRB. The Board did not err in concluding that "[t]he record shows the NLRB did not have a process or procedure to select the next most eligible candidate in line." J.A. 362.

In the absence of any policy requiring his selection, the NLRB produced evidence that Feuer would not have been selected for the New York position. This evidence included testimony from the Chairman, Chief Judge, Deputy Chief Judge, and records from the NLRB's selection process. The Board noted that while Feuer clearly had the knowledge and experience required for the position, the Chairman considered Feuer to be "lacking in judicial temperament," the Chief Judge expressed an "adverse opinion concerning [Feuer's] writing samples," and the Deputy Chief Judge had expressed adverse opinions concerning Feuer's people skills. J.A. 357–58. The Board also noted that Feuer had previously applied to a vacancy at the NLRB and was not selected. The Board did not err in finding "the strength of the NLRB's evidence that it would not have selected [Feuer] despite his whistleblowing activities to be persuasive evidence." J.A. 358. The Board also did not err in concluding that the NLRB had met its burden of persuasion and that the first *Carr* factor weighed in favor of the agency.

The second *Carr* factor is "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision." *Carr*, 185 F.3d at 1323. While the Board noted that the parties did not directly address the issue of "motive on the part of the NLRB to retaliate against" Feuer, it found that, based on the testimony given by the Chairman, "[t]he evidence [did] not support a finding of retaliation." J.A. 359–60. The Board observed that the Chairman took Feuer's allegations seriously, directed an investigation of Feuer's complaints, and made an objectively reasonable (though ultimately erroneous) decision not to make a second vacancy announcement based on a good-faith belief that Green was eligible for the position.

The third and final *Carr* factor is "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr*, 185 F.3d at 1323. Here, the Board noted the "unusual" situation before it meant that "there is little or no available evidence on how the NLRB has handled other similarly situated applicants because withdrawal or disqualification for an ALJ transfer would be rare." J.A. 361. When the whistleblower is in a unique or unusual situation, "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1374 (Fed. Cir. 2012). This is the case here.

We conclude that substantial evidence supports the Board's decision that the NLRB had "provided clear and convincing evidence that it would have taken the same course of action (non-selection of [Feuer]) regardless of [Feuer's] protected disclosures." J.A. 363.

## AFFIRMED

### COSTS

No costs.