# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MICHAEL E. STEVENSON, JR.,
　　　　　Appellant,

　　　　v.

DEPARTMENT OF VETERANS
　　AFFAIRS,
　　　　　Agency.

DOCKET NUMBER
DA-0714-19-0524-I-1

DATE: February 16, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Michael E. Stevenson, Jr., Piedmont, Oklahoma, pro se.

Chau Phan, Esquire, Denver, Colorado, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## FINAL ORDER

¶1　　　The appellant has filed a petition for review of the initial decision, which affirmed his removal under the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, Pub. L. No. 115-41, 131 Stat. 862 (VA Accountability Act) (codified in relevant part, as amended, at 38 U.S.C.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

§ 714).  For the reasons set forth below, we GRANT the petition for review and REVERSE the initial decision.  The appellant's removal is REVERSED.

## BACKGROUND

¶2 The appellant was a GS-08 Supervisory Police Officer (Lieutenant) for the Police Service at the agency's Oklahoma City Veterans Administration Medical Center.  Initial Appeal File (IAF), Tab 4 at 12.  On July 18, 2018, the agency proposed the appellant's removal under 38 U.S.C. § 714 based on an unlabeled narrative charge describing various acts of alleged misconduct, including harsh and unfair treatment of subordinates, misuse of security cameras, and a heated verbal altercation with another Supervisory Police Officer.  *Id*. at 55-57.  After the appellant responded, the agency issued a decision removing him effective September 19, 2019. *Id*. at 12-15, 21-54.

¶3 The appellant filed a Board appeal, contesting the charges and the penalty and raising affirmative defenses of retaliation for equal employment opportunity (EEO) and whistleblowing activity.  IAF, Tab 1 at 3, 5, Tab 10 at 3.  He did not request a hearing.  IAF, Tab 1 at 2.  After the close of the record, the administrative judge issued an initial decision affirming the appellant's removal.  IAF, Tab 17, Initial Decision (ID).  He sustained the charge, finding "that the agency established the appellant's conduct created a work environment where he misused legitimate agency surveillance equipment and objectively intimidated and caused fear among his subordinate employees."  ID at 6-13.  He also denied the appellant's affirmative defenses.  Regarding the appellant's whistleblower defense, the administrative judge found that the appellant proved that he engaged in protected activity that was a contributing factor in his removal but that the agency proved by clear and convincing evidence that it would have removed him even in the absence of that activity.  ID at 13-18.  Regarding the appellant's defense of retaliation for EEO activity, the administrative judge found that the appellant failed to show that his EEO activity was a motivating factor in his

removal.  ID at 18-21.  Finally, the administrative judge acknowledged that the appellant disputed the appropriateness of the penalty, but he declined to reach the issue on the basis that 38 U.S.C. § 714 prohibits mitigation of the agency's chosen penalty.  ID at 21.

¶4  The appellant has filed a petition for review, arguing that some of the evidence upon which the administrative judge relied was not credible.  Petition for Review (PFR) File, Tab 1.  He has submitted, for the first time, various recordings and transcripts of conversations that he had with several agency employees.  PFR File, Tabs 3, 6.  The agency has filed a response.  PFR File, Tab 7.

## ANALYSIS

¶5  In an appeal of an adverse action taken under 38 U.S.C. § 714(a), the agency bears the burden of proving its charges by substantial evidence.  38 U.S.C. § 714(d)(2)(a).  If the agency meets this burden, the Board may not mitigate the agency's chosen penalty, but it is nevertheless required to review the penalty as part of the agency's overall decision.[2]  38 U.S.C. § 714(d)(2)(B), (3)(C); *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370, 1375-79 (Fed. Cir. 2020).

¶6  The agency removed the appellant based on a single, unlabeled narrative charge:

> As a Supervisory Police Officer, you are tasked with leading a team and directly overseeing and monitoring the activities of police personnel assigned to you.  In this position, you have created a culture of fear and intimidation.  You have threatened employees with disciplinary action, including termination, over minor offenses.  You target certain employees for harsher treatment, to include excessive monitoring of employees on surveillance cameras.  At

---

[2] The appellant does not contest the administrative judge's findings on his affirmative defenses of whistleblower retaliation and reprisal for EEO activity, and we find no reason to disturb them.  *See* 5 C.F.R. § 1201.115 ("The Board normally will consider only issued raised in a timely filed petition or cross petition for review.").

> times you have even used the surveillance cameras to monitor women at the hospital, making inappropriate comments about their bodies. The cumulative effect of your conduct has had a detrimental impact on the work environment. Your unprofessional behavior has also spread into your interactions with peers, as demonstrated by your interaction with [another Supervisory Police Officer] on the first floor public hallway of the VA Health Care System. During this interaction on or about February 7, 2018, you spoke in an aggressive manner, used strong (at times profane) language, spoke at a raised volume, and displayed threatening behaviors or gestures.

IAF, Tab 4 at 55. It is well settled that an agency is not required to affix a label to a charge but may simply describe actions that constitute misbehavior in narrative form in its charge letter. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1997). Furthermore, an agency is required to prove only the essence of its charge and need not prove each factual specification supporting the charge. *Hicks v. Department of the Treasury*, 62 M.S.P.R. 71, 74 (1994), *aff'd*, 48 F.3d 1235 (Fed. Cir. 1995) (Table). In this case, the administrative judge found, and neither party disputes, that the essence of the agency's charge was that "the appellant, as a supervisor, engaged in unprofessional, intimidating, and aggressive conduct that was detrimental to the agency's work environment." ID at 7.

¶7 The administrative judge found the agency met its burden to prove the charge. First, he considered the matter of the altercation between the appellant and the other Supervisory Police Officer. ID at 7-8. The two men differed in their accounts of the altercation, but after considering their statements and the deciding official's description of the audio recording that the appellant made of the encounter, he concluded that the appellant's actions were inappropriate. ID at 7-8; IAF, Tab 4 at 126-38, Tab 15 at 25. Second, the administrative judge considered the remainder of the charge, which concerned more generalized allegations of misconduct, including bullying subordinates and the misuse of surveillance cameras. After reviewing the investigatory interview statements of several witnesses, the administrative judge concluded that the agency showed by

substantial evidence that the appellant committed the misconduct as alleged. ID at 8-13; IAF, Tab 4 at 58-108.

¶8       On petition for review, the appellant disputes the administrative judge's findings of fact and credibility determinations, and he seeks to introduce several pieces of evidence that he claims were previously unavailable. PFR File, Tab 1. We do not reach these arguments because we find that developments in the case law after the issuance of the initial decision require that the removal be reversed. Specifically, after the initial decision in this appeal was issued, the Board and the U.S. Court of Appeals for the Federal Circuit issued precedential opinions addressing the application of the VA Accountability Act to events that occurred before the date of its enactment.

¶9       In *Sayers*, 954 F.3d at 1380-82, the court found that 38 U.S.C. § 714 has impermissible retroactive effect, and Congress did not authorize its retroactive application. Therefore, the agency may not use the VA Accountability Act to discipline an employee for matters that occurred before its effective date, June 23, 2017. *Sayers*, 954 F.3d at 1374, 1380-82. Subsequently, the court issued an opinion in *Brenner v. Department of Veterans Affairs*, 990 F.3d 1313 (Fed. Cir. 2021), addressing the section 714 removal of an employee for performance issues both predating and postdating June 23, 2017. The court in *Brenner* vacated the petitioner's removal and remanded the appeal to the Board to determine whether the agency's removal action was "supported by substantial evidence on the evidence of record that postdates the Act." *Id.* at 1330.

¶10      Finally, in *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶¶ 4, 29, the Board addressed the section 714 removal of an employee based on alleged neglect of duty both predating and postdating the effective date of the VA Accountability Act. The Board considered whether it would be possible to sustain the agency's action based solely on any alleged post-June 23, 2017 neglect of duty, but it concluded that the action must be reversed because the underlying alleged instances of misconduct by the appellant's subordinates "are

so factually interrelated that they cannot be fairly separated." *Id*., ¶¶ 29-33 (quoting *Boss v. Department of Homeland Security*, 908 F.3d 1278, 1279, 1282-83 (Fed. Cir. 2018)).

¶11         In this case, as in *Brenner* and *Wilson*, the charge encompasses events that occurred both before and after the effective date of the VA Accountability Act. We have considered whether the charge might be sustained based solely on appellant's conduct after June 23, 2017. *See Brenner*, 990 F.3d at 1330. However, after a careful review of the record, we have determined that this case is indistinguishable from *Wilson*. As in *Wilson, 2022 MSPB 7*, ¶ 33, the notice of proposed removal in this case does not distinguish between events that occurred before and after the effective date of the Act, and the allegations as a whole are rather vague, IAF, Tab 4 at 55. Apart from the February 7, 2018 altercation, the proposal does not contain any specific dates or describe the alleged incidents. Instead, the agency appears to have relied on numerous investigative interview statements that it attached to the proposal in order to give the appellant specific notice of the charges against him.[3] *Id*. at 65-133. A review of these statements shows that they encompass allegations of misconduct from 2009 all the way through the beginning of 2018. *Id*. In fact, excluding interview statements related solely to the February 7, 2018 altercation, only four of the twelve interview statements appear to be largely concerned with events occurring after the enactment of the VA Accountability Act. IAF, Tab 4 at 78-83, 89-92, 99-104. Of these four statements, only two of them could potentially lend significant support to the charge, *id*. at 78-80, 89 92, the other two being generally favorable to the appellant, *id*. at 81-83, 99 104. Thus, the large majority of the agency's allegations either concern events that predate June 23, 2017, or there is no

_____

[3] The Board has found that this approach may be sufficient to satisfy due process requirements. *Alvarado v. Department of the Air Force*, 97 M.S.P.R. 389, ¶ 15 (2004). We make no finding here as to whether the notice of the charges was sufficient to permit the appellant to respond because we reverse the charge on different grounds, as discussed below.

reliable way to determine when the matters described allegedly occurred. *See Wilson*, 2022 MSPB 7, ¶ 31 (noting that only 1 of the 8 months for which the agency charged the appellant with neglect of duty postdated the VA Accountability Act).

¶12      Reading the charge as a whole, we also find that the allegations of misconduct are so interrelated that they cannot be fairly separated. *See id*. The appellant was charged with "creat[ing] a culture of fear and intimidation" through unprofessional, intimidating, and aggressive conduct. IAF, Tab 1 at 55; ID at 7. To our understanding, a workplace culture is created by cumulative actions over a period of time. This understanding is consistent with the broad language in which the agency couched its charge, as well as the expansive scope of information that the agency included in its evidence file. IAF, Tab 4 at 55, 65-133. For these reasons, we find that considering the appellant's post-June 23, 2017 conduct in isolation would be to take it out of the context in which it was meant to be understood in the charge.

¶13      Finally, we observe that the agency's choice of penalty, which is part of the overall decision to be reviewed, *Sayers*, 954 F.3d at 1375-79, was heavily influenced by allegations of misconduct that predate the VA Accountability Act. Specifically, the deciding official considered that the appellant's misconduct had "been going on for a long period of time." IAF, Tab 15 at 25. He also considered to be "extremely serious" certain misuse of surveillance cameras that we find no evidence of whatsoever during the post-June 23, 2017 time period. Therefore, not only is the agency's charge tainted by its impermissible consideration of pre-VA Accountability Act misconduct, but its penalty determination is as well.

¶14      For these reasons, we find that the appellant's removal must be reversed. *See Wilson*, 2022 MSPB 7, ¶ 33. To the extent the agency wishes to take a new adverse action based on events occurring after June 23, 2017, it may do so under the procedures of 38 U.S.C. § 714 or 5 U.S.C. chapter 75. To the extent the

agency wishes to rely on evidence of misconduct that predates the Act, it must proceed in accordance with 5 U.S.C. chapter 75. *See Brenner*, 990 F.3d at 1330.

## ORDER

¶15 We ORDER the agency to cancel the removal action and restore the appellant effective September 19, 2018. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶16 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶17 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶18 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶19     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[4]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.   5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5]  The court of appeals must <u>receive</u> your petition for

---

[5]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD: _____/s/ for_____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.